UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                                                    DECISION AND ORDER
v.                                                01-CR-129A

AARON PIKE, GREGORY PATTISON,
MATTHEW HARRISON, AND
RICHARD C. ALICEA,

                Defendants.

## INTRODUCTION

On Friday, March 3rd, counsel for defendant Gregory Pattison raised the issue of whether the government's witness, Mickey Darling, was acting as a government informant or agent at the time that Pattison confessed to Darling. The Court heard testimony from Mickey Darling and James Hanson, an investigator with the Cattaraugus County Sheriff's Department. The Court also received a brief from Pattison's counsel. Upon hearing the testimony and after reviewing counsel's brief and the applicable cases, the Court finds that Darling was not acting as an informant or agent at any time before June 19, 2001.

## **BACKGROUND**

Darling testified that he first saw Pattison in jail on about May 26, 2001. He and Pattison had been acquainted for several years. Upon seeing Pattison, Darling asked Pattison if he had heard about Richard Alicea Jr.'s murder. Pattison responded that he was there, and that he would tell Darling more about it later.

The next day, Darling again saw Pattison, and Pattison confessed to committing the murders of Johnny Houston and Richard Alicea, Jr. This conversation occurred on or about May 27, 2001.

Shortly thereafter, in early June, Darling sent a letter to the authorities indicating that he had information about Pattison and the murders of Houston and Alicea. About the same time, Darling sent another letter to authorities wherein he claimed to have information about an unrelated crime involving an individual named Nicholas Osman. On June 8th, Officer Hanson interviewed Darling. Hanson asked Darling what information he had about the Osman case and Darling told him. Hanson then asked Darling what other information he had, and Darling told Hanson about Pattison's confession to the Houston and Alicea murders. Darling testified that he provided most of the information he had about Pattison's confession, but that he also withheld some information from the police. Hanson took notes and told Darling that he would talk to the District Attorney, that

he did not know if the District Attorney would find the information helpful or useful, and that he would let Darling know what the District Attorney had to say about the information. Hanson testified that he did not instruct Darling to get any more information or suggest in any way that Darling should do so. Darling also denied being instructed by the police to get any more information from Pattison.

No further contact occurred between Darling and the police until June 19, 2001. In the meantime, Darling was returned to the jail where may have had more discussions with Pattison. It is not clear whether Darling obtained further information from Pattison about the murders beyond what he knew on June 8th. It is also not clear whether Darling initiated those conversations. However, if Darling did initiate the conversations, it is clear that he was doing so of his own volition, and not at the behest of the government. As stated, both Darling and Hanson were adamant in their testimony that the police did not instruct Darling to obtain further information. The Court found their testimony to be credible.

On June 19th, Hanson again met with Darling. At that time, Darling provided a written statement about Pattison's confession. Darling initialed the statement, but refused to sign it until his release. The written statement provided more details concerning the murders than Darling had initially provided to authorities on June 8th. Darling had no further discussions with Pattison about the murders after June 19th. Darling was released from prison on July 23rd, at which time he signed his statement.

**DISCUSSION**

In Massiah v. United States, 377 U.S. 201 (1964), the Supreme Court held the government violates a prisoner's Sixth Amendment right to counsel when it uses, as evidence, statements made by the defendant "which [it] had deliberately elicited from him after he had been indicted and in the absence of his counsel." Id. at 206. In United States v. Henry, 447 U.S. 264 (1980), the Court reaffirmed the principles of Massiah and held that the Sixth Amendment right to counsel is violated when the government intentionally creates a situation where the incriminating statements were "deliberately elicited" by a paid informant.

Therefore, pursuant to Massiah and Henry, a defendant's Sixth Amendment right to counsel is violated when the government deliberately creates a situation in which a prisoner is likely to make incriminating statements and deliberately uses an informant to elicit information from the prisoner. On the other hand, the Sixth Amendment is not violated "whenever – by luck or happenstance– the State obtains incriminating statements from the accused after the right to counsel has attached." Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986). That is, "[a]lthough the government has an affirmative obligation not to solicit incriminating statements from the defendant in the absence of his counsel, there is no constitutional violation when a government informant merely listens and reports." United States v. Birbal, 113 F.3d 342, 345 (2d Cir.), cert. denied, 522 U.S. 976 (1997) (internal quotations and citations omitted).

In this case, Darling may have done more than listen. It appears that he may have prompted Pattison's confession when he asked Pattison if he had heard about Richard Alicea, Jr.'s murder. Nevertheless, there is no evidence that Darling was working for the government when he initially elicited the confession, or anytime before giving his statement on June 19th. "The Sixth Amendment rights of a talkative inmate are not violated when a jailmate acts in an entrepreneurial way to seek information of potential value, without having been deputized by the government to question the defendant." Birbil, 113 F.3d at 346. To the extent that Darling was trying to get useful information from Pattison, it is clear that he was doing so on his own, without any direct or indirect involvement by the government.

It is not relevant that Darling had acted as an informant in the past or had been offering to help in another case. As the Second Circuit held in Birbil, "an informant becomes a government agent for the purposes of Kuhlmann only when the informant has been instructed by the police to get information about the particular defendant" at issue. Id. at 346; see also United States v. Johnson, 338 F.3d 918 (8th Cir. 2003).

As noted above, it is not clear whether Darling obtained more information from Pattison during the time period between June 8th (when Darling initially met with authorities) and June 19th (when Darling gave his statement). Even assuming that he did, and even assuming that it was Darling who initiated

the conversations, the analysis does not change. There is simply no evidence suggesting that the police either expressly or implicitly instructed Darling to obtain information from Pattison. Absent government involvement, there is no Sixth Amendment violation.

Finally, the Court notes that defendant Aaron Pike has moved to exclude Darling's testimony about Pattison's confession to the extent that the confession implicates him. In a Decision and Order issued on March 6th, the Court ruled that Darling's statements against Pike were admissible under the confrontation clause because they were not testimonial in nature (and therefore not barred by Crawford v. Washington, 541 U.S. 36 (2004)), and because pursuant to the Second Circuit's holding in United States v. Matthews, 20 F.3d 538 (2d Cir. 1994), the statements that implicated Pike equally incriminated Pattison and contained sufficient guarantees of trustworthiness so as to render them admissible. Pike argues that the statements are precluded under Bruton v. United States, 391 U.S. 132 (1968).

In Bruton, the Supreme Court held that a defendant's confession to law enforcement authorities implicating himself and a co-defendant in a joint trial violated the co-defendant's rights under the confrontation clause because the confessing defendant was not available for cross-examination. Unlike the instant case, the confession in Bruton was made to law enforcement authorities during an interrogation. As such, the statements in Bruton fall within the "testimonial"

category articulated in Crawford.  Bruton is an example of one type of testimonial statement that would not be admissible under Crawford -- a confession to authorities by a defendant implicating a co-defendant when the confessing defendant is unavailable for cross-examination.  Therefore, Bruton is consistent with Crawford, as the Supreme Court itself has observed.  See Crawford, 124 S. Ct. at 1367-68.

The confession at issue in this case was not made to law enforcement authorities or to an informant acting under instructions from the government.  Because the confession to Darling was not testimonial in nature, it falls outside the scope of Crawford and Bruton.  Therefore, Pike's motion to preclude that portion of the confession that implicates him is denied.

IT IS SO ORDERED.

/s/ Richard J. Arcara
HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED: March 7, 2006